

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 3, 2021**

United States Bankruptcy Judge

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CICI'S HOLDINGS, INC., *et al.*,[1] | ) | Case No. 21-30146 (SGJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 15, 16 and 39** |

**FINDINGS OF FACT, CONCLUSIONS OF
LAW AND ORDER (I) APPROVING DISCLOSURE
STATEMENT ON A FINAL BASIS AND (II) CONFIRMING
JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**

The above-captioned debtors (collectively, the "Debtors") having:

a.     agreed to and executed that certain *Restructuring Support and Forbearance Agreement* dated January 14, 2021 dated as of January by and among the Debtors, the Consenting Lender, and the Consenting Interest Holders (as defined therein);

b.     commenced solicitation and distributed, on or about January 25, 2021: (i) their *Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 15] (as modified,

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: CiCi's Holdings, Inc. (5177); Awesome Acquisition Company (0481); CiCi Acquisition Company, LLC (N/A); CiCi Enterprises, LP (5070); CiCi GP, LLC (2948); CiCi Services, LLC (3586); JMC GP, LLC (8268); JMC Restaurant Distribution, LP (5075); and Pizza Parent, LLC (9534). The Debtors' principal offices are located at 1080 W. Bethel Road, Coppell, Texas 75019, United States.

amended, or supplemented from time to time, the "Plan") attached hereto as **Exhibit A**, (ii) the *Disclosure Statement Regarding Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 15, as amended by that certain *First Amended Disclosure Statement Regarding Debtors' Joint Prepackaged Plan of Reorganization* appearing at Docket No. 39] (the "Disclosure Statement"), and (iii) ballots for voting on the Plan to holders of Claims in Class 3 (Prepetition Credit Agreement Secured Claims), in accordance with the terms of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules");[2]

c.      commenced, on January 25, 2021 (the "Petition Date"), these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code and continued to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code;

d.      filed, on the Petition Date:

   (i)      the Plan and Disclosure Statement;

   (ii)      the Debtors' *Emergency Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Approving the Solicitation Procedures and Dates, Deadlines and Notices Related Thereto, (III) Directing that a Meeting of Creditors not be Convened, (IV) Waiving the Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities, and (V) Granting Related Relief* [Docket No. 17] (the "Scheduling Motion");

   (iii)      the *Declaration of Richard A. Peabody, Chief Financial Officer, In Support of Chapter 11 Petitions and First Day Motion* [Docket No. 20] (the "First Day Declaration"), detailing the facts and circumstances of these Chapter 11 Cases;

e.      obtained, on January 28, 2021, entry of an Order approving the Scheduling Motion [Docket No. 70] (the "Scheduling Order");

f.      served, on or about January 29, 2021, in accordance with the Scheduling Order, and as evidenced by that certain *Certificate of Service* filed at Docket No. 102 (the "Confirmation Service Affidavit"), among other things, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Related Objection and Briefing Deadlines* [Docket No. 75] (the "Combined Notice") on all known parties in interest, which informed recipients of (i) the commencement of these Chapter 11 Cases, (ii) the date scheduled for the combined hearing to consider approval of the

---

[2]      Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "Confirmation Order") have the meanings given to them in the Plan.

Disclosure Statement and confirmation of the Plan on March 3, 2021 (the "Combined Hearing"), (iii) key dates and information regarding approval of the Disclosure Statement and confirmation of the Plan and the Objection Deadline, (iv) the methods by which parties may request copies of the Plan, Disclosure Statement, and Restructuring Support Agreement, and (v) the full text of the release, exculpation, and injunction provisions set forth in the Plan;

g.     caused, on February 2, 2021, an abridged form of Combined Notice (the "Publication Notice") to be published in the *USA Today* and *Dallas Morning News*, as evidenced by the *Notice of Publication* [Docket No. 106] (the "Publication Affidavit");

h.     filed, on February 19, 2021, the *Notice of Filing of Plan Supplement* [Docket No. 141] (the "Plan Supplement"), which was served as reflected in the Certificate of Service filed at Docket No. 147;

i.     filed, on March 1, 2021, the *Tabulation of Votes in Connection with Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 181], which accounts for the ballot received by the Consenting Lender prior to the commencement of these cases (the "Voting Report");

j.     filed, on March 1, 2021, the *Declaration of Richard Peabody, Chief Financial Officer, in Support of Final Approval of the Debtors' Disclosure Statement and Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 182] (the "Peabody Declaration");

k.     filed, on March 1, 2021, the *Declaration of Teri Stratton in Support of Final Approval of the Debtors' Disclosure Statement and Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 183] (the "Stratton Declaration"); and

l.     filed, on March 1, 2021, the *Declaration of Anand Gala in Support of Final Approval of the Debtors' Disclosure Statement and Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 184] (the "D & G Declaration").

This Court having:

m.     entered the Scheduling Order on January 28, 2021, which, among other things, approved:

(i)     January 25, 2021, as the deadline by which Ballots must be received by the Debtors or their Claims and Noticing Agent;

(ii)     February 24, 2021, at 5:00 p.m., prevailing Central Time, as the deadline for filing objections to the adequacy of the Disclosure Statement or confirmation of the Plan (the "Objection Deadline");

(iii)    March 1, 2021, at 5:00 p.m., prevailing Central Time, as the deadline for filing any brief(s) in support of confirmation and replies to any objections to the adequacy of the Disclosure Statement or confirmation of the Plan (the "Brief Deadline"); and

(iv)    March 3, 2021, at 9:30 a.m., prevailing Central Time, as the date and time for the commencement of the Combined Hearing in accordance with rules 3017 and 3018 of the Bankruptcy Rules and sections 1126, 1128, and 1129 of the Bankruptcy Code;

n.    entered the *Stipulation and Agreed Order Extending Deadlines for (I) Filing the Plan Supplement and (II) Objecting to Confirmation of the Plan* at Docket No. 127 (the "Extension Stipulation") extending the deadline for: a) filing the Plan Supplement to February 19, 2021, and b) filing objections to the adequacy of the Disclosure Statement or confirmation of the Plan to February 26, 2021 at 5:00 p.m. prevailing Central Time;

o.    reviewed the Plan, the Disclosure Statement, the Plan Supplements, the Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

p.    ordered at Docket No. 45 that Proofs of Claim submitted by governmental units must be submitted so as to be actually received by the Claims Agent on or before July 24, 2021;

q.    held the Combined Hearing;

r.    heard the statements and arguments made by counsel with respect to Confirmation;

s.    considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Combined Hearing;

t.    taken judicial notice of all pleadings and other documents filed, all orders entered, and other evidence regarding Confirmation;

u.    entered rulings on the record at the Combined Hearing (the "Confirmation Ruling");

v.    overruled any and all objections to the Plan and Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

w.    taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

4

NOW, THEREFORE, the Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and on the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Combined Hearing including, without limitation, the Peabody Declaration, Stratton Declaration and the D & G Declaration; and after due deliberation and good cause appearing therefor, the Court hereby

**FINDS, DETERMINES , CONCLUDES AND ORDERS AS FOLLOWS:**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**A. Findings and Conclusions**

1. The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. The findings and conclusions of the Court pursuant to Bankruptcy Rule 7052 set forth in the record at= the Confirmation Hearing, if any, are incorporated as if set forth herein. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B. Jurisdiction and Venue**

2. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

**C.      Eligibility for Relief**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the Court's *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 44], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

**E.      Judicial Notice**

5.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

**F.      Plan Supplement**

6.      On February 19, 2021, the Debtors filed the Plan Supplement with the Bankruptcy Court consisting of, *inter alia*, (a) the disclosures required pursuant to 1129(a)(5), (b) the Exit Facility Term Sheet, (c) the Assumed Executory Contracts and Unexpired Leases List (as defined in the Plan), (d) the Assumed and Assigned Unexpired Leases Schedule (Exhibit D to the Plan Supplement), and (e) the Schedule of Retained Causes of Action (Exhibit F to the Plan Supplement); and on March 2 2021, the Debtors filed the *Notice of Filing of First Amended Plan*

*Supplement* [Docket No. 189] (collectively, the <u>Plan Supplement</u>”).  The Plan Supplement provided timely and adequate notice of proposed Cure Claims under the Plan, complies with the terms of the Plan, and the Debtors provided good and proper notice of the filings in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Scheduling Order, and the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy Rules; *provided* that no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the Plan.

**G.     Modifications to the Plan**

7.     Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement of solicitation described or set forth herein constitute (i) technical changes or changes with respect to particular Claims or Interests made pursuant to the agreement of the Holders of such Claims or Interests and/or otherwise (ii) do not materially and adversely affect the treatment of any Claims or Interests.  Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

8.     This Confirmation Order contains modifications to the Plan that were made to address certain objections and informal comments received from parties in interest.  Modifications to the Plan since entry of the Scheduling Order, if any, are consistent with the provisions of the

Bankruptcy Code. The disclosure of any Plan modifications prior to or on the record at the Combined Hearing constitutes due and sufficient notice of any and all Plan modifications. The Plan, as modified, shall constitute the Plan submitted for Confirmation.

**H.**     **Objections Overruled**

9.     Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Bankruptcy Court on the record at the Combined Hearing is hereby incorporated by reference. All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

**I.**     **Adequacy of the Disclosure Statement**

10.     The Disclosure Statement contains "adequate information" (as such term is defined in Bankruptcy Code § 1125(a) and used in Bankruptcy Code § 1126(b)(2)) with respect to the Debtors, the Plan, and the transactions contemplated therein. To the extent not withdrawn, settled, or otherwise resolved, any objections to the approval of the Disclosure Statement are overruled.

**J.**     **Transmittal and Mailing of Materials; Notice**

11.     As evidenced by the Confirmation Service Affidavit, the Publication Affidavit, and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Scheduling Order, the Combined Notice, the Plan Supplement, and all the other materials that the Debtors distributed in connection with the Confirmation of the Plan are in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Rules, and the procedures set forth in the Scheduling Order. The Debtors provided due, adequate, and sufficient notice of the Plan Objection Deadline, the Third Party Releases (as defined in the Plan), the ability of a party in interest to "opt out" of the Third Party Releases, the Combined Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Scheduling Order in compliance with the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules, and the Scheduling Order.  No other or further notice is or shall be required.

**K.**     **Solicitation**

12.     The Plan, the Disclosure Statement, Plan Supplements and the other materials distributed by the Debtors in connection with solicitation of the Plan were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, with the Local Rules, and with the procedures set forth in the Scheduling Order.

13.     The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and provided the opportunity for creditors to objection to the releases set forth in the Plan.  Such solicitation and notice complied with sections 1125 and 1126 and all other applicable sections of the Bankruptcy Code, rules 3017, 3018, and 3019 of the Bankruptcy Rules, the Scheduling Order, the Local Rules, and all other applicable rules, laws, and regulations.

**L.**     **Voting Report**

14.     Before the Combined Hearing, the Debtors filed the Voting Report.  The Voting Report was admitted into evidence during the Combined Hearing.  The procedures used to tabulate ballots were fair and conducted in accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

15.     As set forth in the Plan, only Holders of Claims in Class 3were eligible to vote on the Plan.  Holders of Claims in Classes 1 and 2 (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively deemed to accept the Plan and, therefore, did not vote to accept or reject the Plan.  Holders of Claims and Interests in Classes 4, 5, 6 and 7 (the "Deemed Rejecting

4844-0143-1002.13

Classes") are Impaired under the Plan and/or are entitled to no recovery under the Plan and are, therefore, deemed to have rejected the Plan.[3]

16.    As evidenced by the Voting Report, Class 3 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

**M.    Bankruptcy Rule 3016**

17.    The Plan and all modifications thereto were dated and identified the entities submitting such modification, thus satisfying Bankruptcy Rule 3016(a).    The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).  The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, with specific and conspicuous language, all acts to be enjoined, released, and exculpated and identify the entities that will be subject to the injunction, releases, and exculpations, thereby satisfying Bankruptcy Rule 3016(c).

**N.    Burden of Proof**

18.    The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation.  Each witness who testified on behalf of the Debtors in connection with Confirmation was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**O.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

19.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

---

[3]    The Plan provides for Holders of General Unsecured Claims in Class 4 to receive their pro rata share of funds established under the Plan.  Holders of Claims in Class 4 were not solicited prepetition or pursuant to the Scheduling Order, and were deemed to reject the Plan.

4844-0143-1002.13

**a. Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

20.     The Plan complies with all applicable provisions of the Bankruptcy Code, including

sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

**i.   Sections 1122 and 1123(a)(1)—Proper Classification**

21.     The classification of Claims and Interests under the Plan is proper under the

Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code,

Article III of the Plan provides for the separate classification of Claims and Interests into six or

seven different Classes, depending on the applicable Debtor, based on differences in the legal

nature or priority of such Claims and Interests (other than Administrative Claims, DIP Claims, and

Priority Tax Claims, which are addressed in Article II of the Plan and are not required to be

designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code).  Valid business,

factual, and legal reasons exist for the separate classification of such Claims and Interests, such

classifications were not implemented for any improper purpose and do not unfairly discriminate

between or among Holders of Claims and Interests.

22.     In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims

or Interests contains only Claims or Interests that are substantially similar to the other Claims or

Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a),

1122(b), and 1123(a)(1) of the Bankruptcy Code.

**ii.   Section 1123(a)(2)—Specification of Unimpaired Classes**

23.     Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired under

the Plan. In addition, Article II of the Plan specifies that each Holder of Administrative Claims or

Allowed Priority Tax Claims against the Debtors shall be allowed and shall receive full and final

satisfaction of its Administrative Claim in an amount of Cash equal to the amount of such Allowed

4844-0143-1002.13

Administrative Claim or Allowed Priority Tax Claim.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii.  Section 1123(a)(3)—Specification of Treatment of Impaired Classes

24.      Article III of the Plan specifies the treatment of each Impaired Class under the Plan, and Claims and Interests, as applicable, in Classes 3, 4, 5, 6, and 7 are Impaired.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv.  Section 1123(a)(4)—No Discrimination

25.      Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.  Section 1123(a)(5)—Adequate Means for the Plan's Implementation

26.      The Plan and the various documents included in the Plan Supplement provide adequate and proper means for the Plan's execution and implementation, including, without limitation: (a) the Assumed Executory Contract and Unexpired Lease List; (b) the Assumed and Assigned Unexpired Leases Schedule; (c) the New Organizational Chart; (d) the Exit Facility Term Sheet; and (e) the schedule of retained Causes of Action (such listed Causes of Action being "Retained Causes of Action").  The Plan provides general authority for the Debtors or Reorganized Debtors, as applicable, to take all actions necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, as set forth more fully in Article IV of the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

4844-0143-1002.13

### vi. Section 1123(a)(6)—Non-Voting Equity Securities

27.     The Plan does not provide for the issuance of new non-voting equity securities.

Accordingly, section 1123(a)(6) of the Bankruptcy Code is inapplicable.

### vii. Section 1123(a)(7)—Directors, Officers, Managers, and Trustees

28.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

The Plan Supplement identifies the directors and officers of the Debtors on and after the Effective

Date.

### b.     Section 1123(b)—Discretionary Contents of the Plan

29.     The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy

Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the

Plan satisfies section 1123(b).

### i.     Impairment/Unimpairment of Any Class of Claims or Interests

30.     Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class

of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

### ii.     Assumption and Rejection of Executory Contracts and Unexpired Leases

31.     Article V of the Plan provides that on the Effective Date, except as otherwise

provided therein, each Executory Contract and Unexpired Lease not previously rejected, assumed,

or assumed and assigned, including, without limitation, any employee benefit plans, severance

plans, and other Executory Contracts under which employee obligations arise, shall be deemed

automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such

Executory Contract or Unexpired Lease:  (a) was assumed or rejected previously by the Debtors;

(b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to

assume filed on or before the Effective Date; or (d) is identified on the Assumed Executory

Contract and Unexpired Lease List or the Assumed and Assigned Unexpired Leases Schedule. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption and assignment of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Pursuant to section 365(k), neither the Debtors nor the Reorganized Debtors shall have any liability to any entity for any contract or lease assumed and assigned to a third party pursuant to the Plan as provided in the Plan Supplement, for any breach of such contract or lease occurring after the Effective Date of the Plan.

32.     Therefore, the Plan satisfies section 1123(b)(2) of the Bankruptcy Code.

### iii.     Compromise and Settlement

33.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, Causes of Action, as applicable, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. Those settlements and compromises are fair, equitable, and reasonable and approved as being in the best interests of the Debtors and their Estates.

### iv.     Release by the Debtors

34.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the releases of claims and Causes of Action by the Debtors described in Article VIII(D) of the Plan (the "Debtor Release") represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019. For the reasons set forth on the record of these Chapter 11 Cases and the evidence proffered, admitted, or adduced at the Confirmation hearing, such releases are a necessary and integral part of the Plan, and are fair and equitable and in the best interests of the Debtors, their

estates, and the Holders of Claims and Interests. The Debtor Release is "fair and equitable" and "in the best interests of the estate" considering (a) the probability of success in litigation of the released Claims and Causes of Action given uncertainty in fact and law with respect to the Claims and Causes of Action; (b) the complexity and likely duration and expense of litigating the released Claims and Causes of Action; and (c) the arm's-length negotiations which produced the settlement embodied in the Plan and the Restructuring Transactions. The Debtors' pursuit of any such claims against the Released Parties is not in the best interests of the estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims. The Debtor Release is fair and equitable and complies with the absolute priority rule.

35.     The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process. The Released Parties under the Plan include: (a) each of the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Lender; (d) the Prepetition Administrative Agent; (e) the Exit Facility Agent, if applicable; (f) the DIP Lender; (g) the Consenting Lender; (h) all Holders of Interests in Pizza Holdings, LLC; (i) the Consenting Interest Holders; (j) with respect to each of the foregoing, where any of the foregoing is an investment manager, advisor, or sub-advisor for a beneficial holder, such beneficial holder; and (k) with respect to each of the foregoing entities in clauses (a) through (j), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, affiliated investment funds or investment vehicles, managed accounts or funds, investment managers, advisors, and sub-advisors with discretionary authority, participants, and each of their respective current and former equity holders, officers, directors, managers, principals, members, management companies, fund

advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided*, *however*, that any Entity identified in the foregoing clauses (a) through (k) that opts out of the releases shall not be a "Released Party." The Released Parties made significant concessions and contributions to the Debtors' Chapter 11 Cases, including but not limited to, actively supporting the Plan and the Chapter 11 Cases, making the Consenting Interest Holder Contribution, and settling and compromising substantial rights and claims against the Debtors under the Plan. The Combined Notice provided unambiguous information describing the Debtor Release in bold and conspicuous typeface, and the Publication Notice referenced the release provisions in the Plan and advised careful review of the release, exculpation, discharge, and injunction provisions in Article VIII of the Plan and emphasized in bold and capitalized typeface that parties' rights may be affected thereby.

36. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is approved.

<strong>v.     Releases by the Consenting Lender Releasing Parties</strong>

37. In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the releases of claims and Causes of Action by the Consenting Lender Releasing Parties of each Consenting Lender Released Party as described in Article VIII(E) of the Plan represent a valid exercise of the business judgment and are an essential provision of the Plan, negotiated in good faith and at arms' length. The Combined Notice provided unambiguous information describing the Consenting Lender Release (as defined in the Plan) in bold and conspicuous typeface, and the Publication Notice referenced the release provisions in the Plan and advised careful review of the release,

16

exculpation, discharge, and injunction provisions in Article VIII of the Plan and emphasized in bold and capitalized typeface that parties' rights may be affected thereby. Such releases are approved.

### vi. Releases by the Consenting Interest Holder Releasing Parties

38.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the releases of claims and Causes of Action by the Consenting Interest Holder Releasing Parties of each Consenting Interesting Holder Released Party as described in Article VIII(F) of the Plan represent a valid exercise of the business judgment and are an essential provision of the Plan, negotiated in good faith and at arms' length. The Combined Notice provided unambiguous information describing the Consenting Interested Holder Release (as defined in the Plan) in bold and conspicuous typeface, and the Publication Notice referenced the release provisions in the Plan and advised careful review of the release, exculpation, discharge, and injunction provisions in Article VIII of the Plan and emphasized in bold and capitalized typeface that parties' rights may be affected thereby. Such releases are approved.

### vii. Release by Holders of Claims and Interests

39.     The Third-Party Releases by the Releasing Parties, set forth in Article VIII(G) of the Plan, are an essential provision of the Plan. The Third-Party Releases are (a) consensual, (b) in exchange for the good and valuable consideration provided by the Released Parties, (c) a good-faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release, (d) materially beneficial to and in the best interests of the Debtors, their Estates, and their stakeholders and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases, (e) fair, equitable, and reasonable, (f) given and made after due notice and opportunity for hearing, (g) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third-Party Release

4844-0143-1002.13

against any of the Released Parties, and (h) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

40.     The Third-Party Releases are an integral part of the Plan that is supported by many of the Debtors' creditors and provides a recovery under the facts and circumstances of these Chapter 11 Cases.  Like the releases provided in Article VIII(D), VIII(E) and VIII(F), the Third-Party Releases facilitated participation of the Released Parties in both the Plan and the chapter 11 processes generally.  The Third-Party Releases are instrumental to the Plan and were critical in incentivizing the Released Parties to support the Plan.  The Third-Party Releases were instrumental in developing a plan that maximized value for all of the Debtors' stakeholders, and implemented the Debtors' prepackaged Plan.

41.     The Plan appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process, Unimpaired Creditors whose claims are being satisfied in full in cash or otherwise receiving a full recovery, or Holders of Claims or Interests that did not opt out of the Third-Party Releases by objection to the Plan.  The Released Parties have made a substantial contribution to the Debtors' Chapter 11 Cases.  Furthermore, the Third-Party Releases are consensual because (a) the Releasing Parties were provided adequate notice of the chapter 11 proceedings, the Plan, and the deadline to object to confirmation of the Plan, (b) creditors and interest holders were given the opportunity to object to the Plan, and (c) the release provisions of the Plan were emphasized with conspicuous typeface in the Plan and the Disclosure Statement. The Combined Notice provided unambiguous information describing the Third-Party Releases in bold and conspicuous typeface, and the Publication Notice referenced the release provisions in the Plan and advised careful review of the release, exculpation, discharge,

4844-0143-1002.13

and injunction provisions in Article VIII of the Plan and emphasized in bold and capitalized typeface that parties' rights may be affected thereby

42.     Each of the Released Parties, as stakeholders and critical participants in the Debtors' Chapter 11 Cases and the Plan process, share a common goal with the Debtors in seeing the Plan succeed.

43.     The scope of the Third-Party Releases is appropriately tailored to the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third-Party Releases.  Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Releases, and no other disclosure is necessary.  The Debtors, as evidenced by the Confirmation Service Affidavit, provided sufficient notice of the Third-Party Releases, and no further or other notice is necessary. The Third-Party Releases are specific in language, integral to the Plan, and given for substantial consideration.

44.     In light of the foregoing, the Third-Party Releases are approved.

### viii.    Exculpation

45.     The exculpation provisions set forth in Article VIII(H) of the Plan (the "Exculpation") are essential to the Plan.  The record in the Chapter 11 Cases fully supports the exculpation and the exculpation provisions set forth in Article VIII(H) of the Plan, which are appropriately tailored to protect the Exculpated Parties from unnecessary litigation and contain appropriate carve outs for gross negligence, actual fraud, and willful misconduct. The Combined Notice provided unambiguous information describing the Exculpation provisions of the Plan in bold and conspicuous typeface, and the Publication Notice advised careful review of the release, exculpation, discharge, and injunction provisions in Article VIII of the Plan and emphasized in bold and capitalized typeface that parties' rights may be affected thereby.

46.     Without limiting anything in the Exculpation or the release provisions of the Plan, each Exculpated Party is appropriately released and exculpated from any Cause of Action for any claim based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Prepetition Credit Agreement, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the RSA and related prepetition transactions, the Disclosure Statement, the Exit Facility Documents, if applicable, the New Organizational Documents, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Exit Facility Documents, if applicable, the New Organizational Documents, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross

negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

### ix. Injunction

47. The injunction provisions set forth in Article VIII(I) of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the discharge, the release provisions of the Plan (including the Debtor Release and the Third-Party Release), the Exculpation, and by extension the compromise and settlement upon which the Plan is founded. Such injunction provisions are appropriately tailored to achieve those purposes.

### x. Preservation of Causes of Action

48. Article IV(L) of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.

49. The Plan provides that all Causes of Action, including Retained Causes of Action, shall be conveyed to the Reorganized Debtors, and the Plan and Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Debtors may retain, and all parties in interest received adequate notice with respect to such Causes of Action. The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests. For the avoidance of doubt, except with respect to the Retained Causes of Action and as otherwise provided in the Plan, all

21

Claims and Causes of Action released or exculpated under the Plan and/or released and/or waived pursuant to the DIP Order will not be retained by the Debtors.

### xi. Lien Releases

50. Except as otherwise provided in the Plan, the Plan Supplement, this Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, including, but not limited to, the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III(B)(2) of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns; *provided*, *however*, that the liens of the Prepetition Lender and the DIP Lender on the Debtors' assets shall be amended and reinstated in conjunction with the Exit Facility. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Debtors or the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

4844-0143-1002.13

### xii.     Additional Plan Provisions

51.     The other discretionary provisions in the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without limitation, provisions for the allowance of certain Claims and Interests, treatment of D&O Liability Insurance Policies, and the retention of Court jurisdiction.

### xiii.     Cure of Defaults

52.     Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  The Debtors or the Reorganized Debtors, as applicable, shall pay any Cure Claims not already paid, if any, in Cash on the Effective Date or in the ordinary course of business, in the amounts set forth in the Plan Supplement or as otherwise agreed by the Debtors or the Reorganized Debtors, as applicable, and any non-Debtor counterparty to any assumed Executory Contract or Unexpired Lease, or as ordered by the Court.  Any disputed Cure Claims will be determined in accordance with the procedures set forth in Article V.C of the Plan, prior orders of the Court providing for the same, and applicable bankruptcy and nonbankruptcy law.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts or Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code. Pursuant to section 365(k), neither the Debtors nor the Reorganized Debtors shall have any liability to any entity under any contract or lease assumed and assigned to a third party pursuant to the Plan as provided in the Plan Supplement, for any breach of such contract or lease occurring after the Effective Date of the Plan.

c. **Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code**

53. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and with Bankruptcy Rules 2002, 3017, 3018, and 3019.

54. The Debtors solicited and tabulated votes on the Plan in accordance with and pursuant to sections 1125(a) and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Scheduling Order, and all other applicable law.

55. The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Scheduling Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII(H) of the Plan.

56. The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not and, on account of such distributions, will not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan so long as such distributions are made consistent with and pursuant to the Plan.

4844-0143-1002.13

### d.    Section 1129(a)(3)—Proposal of Plan in Good Faith

57.    The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Debtors' good faith is evident from the facts and the record of the Chapter 11 Cases, the Disclosure Statement, the record of the Combined Hearing and other proceedings held in the Chapter 11 Cases.

58.    The Plan is the product of good faith, arm's-length negotiations by and among the Debtors, the Debtors' directors, officers and managers, the DIP Lender, the Prepetition Lender, the Consenting Interest Holders, and the other constituencies involved in the Chapter 11 Cases, including the lender under the Exit Facility (the "Exit Facility Lender").  The Plan itself and the process leading to its formulation provide independent evidence of the good faith of the Debtors, the Consenting Interest Holders, the Prepetition Lender, the DIP Lender, and the Exit Facility Lender, serve the public interest, and assure fair treatment of holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Debtors filed the Chapter 11 Cases with the belief that the Debtors were in need of restructuring and the Plan was negotiated and proposed with the intention of maximizing stakeholder value and for no ulterior purpose.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### e.    Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable

59.    Any payment made or to be made by the Debtors or by a person acquiring property under the Plan for services or costs and expenses in connection with the Chapter 11 Cases or the Plan, and incident to the Chapter 11 Cases, as applicable, has been approved by or is subject to the approval of the Court as reasonable.  Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

4844-0143-1002.13

**f.      Section 1129(a)(5)—Disclosure of Directors, Officers, and Managers and Consistency with the Interests of Creditors and Public Policy**

60.      The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.  The Reorganized Debtors' initial directors and officers, to the extent known, have been disclosed at or prior to the Combined Hearing through the Plan Supplement and, to the extent not known, will be determined in accordance with the Plan. The proposed officers and directors for the Reorganized Debtors are qualified, and their appointment to, or continuance in, such roles is consistent with the interests of Holders of Claims and Interests and with public policy

**g.      Section 1129(a)(6)—Rate Changes**

61.      The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and, accordingly, will not require governmental regulatory approval.  Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**h.      Section 1129(a)(7)—Best Interests of Holders of Claims and Interests**

62.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached as <u>Exhibit F</u> to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to, or in affidavits filed in connection with the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**i.      Section 1129(a)(8)—Acceptance by Certain Classes**

63.     The Plan satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code, except as set forth below. Classes 1 and 2 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  The Voting Class, Class 3, has voted to accept the Plan.  Holders of Claims and Interests in Classes 4, 5, 6 and 7 are Unimpaired and conclusively presumed to have accepted the Plan (to the extent Reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan.

**j.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

64.     The treatment of Administrative Claims and Priority Tax Claims, and statutory fees imposed by 28 U.S.C. § 1930 under Article II of the Plan satisfies the requirements of and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

**k.      Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

65.     As set forth in the Voting Report, Holders of Claims in Class 3 voted to accept the Plan in the requisite number and amount.  As such, there is at least one class of Claims that is Impaired under the Plan that has accepted the Plan, without including any insiders (as defined in the Bankruptcy Code).  Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**l.      Section 1129(a)(11)—Feasibility of the Plan**

66.     The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The financial projections attached as <u>Exhibit D</u> to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to, or in affidavits filed in connection with the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate

as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**m.    Section 1129(a)(12)—Payment of Statutory Fees**

67.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article XII(C) of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**n.    Section 1129(a)(13), (14), (15), and (16)—Retiree Benefits, Domestic Support Obligations, Individuals, and Nonprofit Corporations**

68.    Sections 1129(a)(13), (14), (15) and (16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors do not maintain "retiree benefit" programs as defined in section 1114 of the Bankruptcy Code, owe no domestic support obligations, are not individuals, and are not nonprofit corporations.  However, Article V(F) of the Plan contemplates that, if there are any retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code) payable by the Debtors, the same may continue to be paid in accordance with applicable law at the discretion of the Reorganized Debtors.

**o.    Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Classes**

69.    Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because (a) Class 3 voted to accept the Plan; (b) the Plan does not discriminate unfairly and is fair and

equitable with respect to the Claims and Interests in the Deemed Rejecting Classes; (c) the Plan has been proposed in good faith and is reasonable; and (d) the Plan meets the requirements that (i) no Holder of any Claim or Interest that is junior to each such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest and (ii) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim. As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied. After entry of this Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Deemed Rejecting Classes.

**p.      Section 1129(c)—Only One Plan**

70.      The Plan is the only plan filed in the Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

**q.      Section 1129(d)—Principal Purpose of the Plan is Not Avoidance of Taxes or Section 5 of the Securities Act**

71.      No Governmental Unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**r.      Section 1129(e)—Not Small Business Cases**

72.      The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

4844-0143-1002.13

**s.    Satisfaction of Confirmation Requirements**

73.    Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan and the Debtors, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**t.    Conditions to Effective Date**

74.    The Plan shall not become effective unless and until the conditions set forth in Article IX(A) of the Plan have been satisfied or waived pursuant to Article IX(B) of the Plan.

**u.    Binding and Enforceable**

75.    The Plan and this Confirmation Order have been negotiated in good faith and at arm's-length and, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan.  The Plan and this Confirmation Order constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**v.    Implementation**

76.    All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan and entry

into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, the estates, and the Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

### w. Vesting of Assets

77. Except as otherwise provided in this Confirmation Order, the Plan, or any other agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens securing obligations under the Exit Facility Documents, and the Liens securing obligations on account of Other Secured Claims that are Reinstated pursuant to the Plan, if any).

### x. Treatment of Executory Contracts and Unexpired Leases.

78. Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption, assumption and assignment, or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided therein or another prior or pending notice and/or motion or as may be agreed by the non-Debtor counterparty to an Executory Contract or Unexpired Lease. The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests and other parties in interest in the Chapter 11 Cases.

31

79.     The Debtors gave notice of the proposed Cure Claims to each non-Debtor counterparty to an Executory Contract or Unexpired Lease that the Debtors seek to assume under the Plan.  The notice of the proposed Cure Claims was good, sufficient, and appropriate under the circumstances, and no further notice need be given to any party in respect of establishing a Cure Claim for the respective Executory Contract or Unexpired Lease.  Non-Debtor counterparties to the applicable Executory Contracts and Unexpired Leases have had a sufficient, reasonable, and appropriate opportunity to object to the proposed cure amounts.  The Debtors, through the Plan Supplements, have also provided sufficient notice of the proposed assignees for certain Unexpired Leases through the Assumed and Assigned Unexpired Leases Schedule.

**y.      Disclosure of Facts**

80.     The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

**z.      Retention of Jurisdiction**

81.     The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

**aa.     Objections**

82.     All objections, responses, reservations, statements, and comments in opposition to the Plan, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Combined Hearing are overruled on the merits in all respects, with prejudice.  All withdrawn objections, if any, are deemed withdrawn with prejudice.  All objections to Confirmation not filed and served prior to the deadline for filing objections to the Plan set forth in

32

the Combined Notice, if any, are deemed waived and shall not be considered by the Bankruptcy Court.

83.     All parties have had a full and fair opportunity to litigate all issues raised or might have been raised in the objections to Confirmation of the Plan, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

84.     This Confirmation Order confirms the Plan in its entirety except as set forth herein.

85.     This Confirmation Order approves the adequacy of the Disclosure Statement, on a final basis.

86.     This Confirmation Order approves the Plan Supplement, including the documents contained therein, as they may be amended through and including the Effective Date in accordance with and as permitted by the Plan.  The terms of the Plan, the Plan Supplement, the Settlement Agreements, the Settlement Order, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order; *provided* that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

87.     The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest, including, but not limited to, the following:  (a) the Debtors; (b) the Prepetition Lenders; (c) the DIP Lender; (d) the Consenting Interest Holders; (e) the Exit Facility Lender; and (f) all holders of Claims and Interests.

88. The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the Court's intent that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

## A. Objections

89. To the extent that any objections or reservations of rights with respect to Confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Combined Hearing, all such objections and reservations of rights are hereby overruled in their entirety and on their merits in all respects.

## B. Findings of Fact and Conclusions of Law

90. The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Bankruptcy Court at the Combined Hearing in relation to Confirmation, including the Confirmation Ruling, are hereby incorporated into this Confirmation Order. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Combined Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

## C. Combined Hearing Notice

91. The Notice provided by the Debtors of the Combined Hearing and the objection deadlines to the adequacy of the Disclosure Statement complied with the Scheduling Order (as

amended by the Extension Stipulation, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

**D.      Plan Modifications**

92.      In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to accept the Plan, including any modifications.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of modifications to the Plan or Plan Supplement.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and do not (a) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially and adversely change the treatment of any Claims, (d) require re-solicitation of the Plan and Disclosure Statement, (e) require that Holders of Claims in Class 3, the only class entitled to vote on the Plan, be afforded an opportunity to change its previously cast acceptance of the Plan.  Under the circumstances, the form and manner of notice of the proposed modifications to the Plan are adequate, and no other or further notice of the proposed modifications is necessary or required.   In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims that were entitled to vote on the Plan and voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the modifications.

**E.      Post-Confirmation Modification of the Plan**

93.      Subject to the limitations and terms contained in Article X of the Plan, the Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial

4844-0143-1002.13

consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and in a manner consistent with the RSA, without further order of this Court.

**F.     Plan Classification Controlling**

94.     The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.

**G.     No Action Required**

95.     No further action of the respective directors, equity holders, managers, or members of the Debtors or Reorganized Debtors is required to authorize the Debtors or the Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions set forth therein, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

96.     This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**H.     General Settlement of Claims and Interests**

97.     Pursuant to section 1123 of the Bankruptcy Code and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement

of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan.  All

distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and

shall be final.

## I.        Restructuring Transactions

98.        On the Effective Date, the Debtors and the Reorganized Debtors, as applicable,

shall enter into any transaction and shall take any actions as may be necessary or appropriate to

effect the Restructuring Transactions described herein and in Article IV(B) of the Plan by, among

other things, execution and filing of the Exit Facility Documents.

## J.        Corporate Action and Plan Implementation

99.        On the Effective Date, and without the need for any further action by any of the

Debtors' officers, directors, managers, members or shareholders, all actions contemplated under

the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed

authorized and approved in all respects in accordance with the law of the jurisdiction of formation

for each of the Debtors.  All matters provided for in the Plan or deemed necessary or desirable by

the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors

or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized

Debtors in connection with the Plan or corporate structure of the Debtors or the Reorganized

Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any

requirement of further action by the officers, directors, managers, members or shareholders of the

Debtors or the Reorganized Debtors.  Before, on, or after the Effective Date, the appropriate

officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue,

execute, and deliver the agreements, documents, securities, and instruments contemplated under

the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the

name of and on behalf of the Reorganized Debtors.  The authorizations and approvals contemplated

4844-0143-1002.13

by Article IV of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

100.    The Debtors and the Reorganized Debtors, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms and the terms hereof, or take any or all corporate actions authorized to be taken pursuant to the Plan or this Confirmation Order, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court.  To the extent applicable, any and all such documents shall be accepted upon presentment by each of the respective state filing or recording offices and filed or recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.  Pursuant to all applicable provisions of the business corporation laws of any applicable state,  no action of the Debtors' boards of directors will be required to authorize the Debtors to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the Effective Date, each of the Plan documents will be a legal, valid, and binding obligation of the Debtors and the Reorganized Debtors, as applicable, enforceable against each in accordance with the respective terms thereof.

101.    The New Organizational Documents shall prohibit the issuance of nonvoting equity securities and shall comply with all other applicable provisions of 11 U.S.C. § 1123(a)(6) regarding the distribution of power among, and dividends to be paid to, different classes of voting securities.

4844-0143-1002.13

### K.       Vesting of Assets in the Reorganized Debtors

102.     Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date, the assets of the Debtors shall vest in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, the Reorganized Debtors may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

103.     On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. To the extent that the retention by the Debtors or the Reorganized Debtors of assets or property held immediately prior to the Effective Date in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Debtors or the Reorganized Debtors (a) is or shall be a legal, valid, and effective transfer of property, (b) vests or shall vest the Debtors or the Reorganized Debtors with good title to such property, free and clear of all Liens, Claims, charges, or other encumbrances, except as expressly provided in the Plan or this Confirmation Order, (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) does not and shall not subject the Debtors or the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including by laws affecting successor or transferee liability.

**L.     Cancellation of Securities and Agreements**

104.    Upon the Effective Date, except as set forth in the Plan and the Exit Facility Documents:  (a) the obligations of the Debtors under the Prepetition Credit Agreement and any other certificate, security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be canceled solely as to the Debtors and their affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released; *provided however*, that the liens of the Prepetition Lender and the DIP Lender on the Debtors' assets shall be amended and reinstated in conjunction with the Exit Facility.

**M.     The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

105.    As discussed in detail in the Disclosure Statement, the Plan, and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled,

compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order shall constitute the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

106.    The releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are "so ordered," and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party.

107.    Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or this Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities

or the property or the estates of such Entities on account of or in connection with or with respect

to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any

kind against any obligation due from such Entities or against the property of such Entities on

account of or in connection with or with respect to any such claims or interests unless such Holder

has filed a motion requesting the right to perform such setoff on or before the Effective Date, and

notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or

intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing

or continuing in any manner any action or other proceeding of any kind on account of or in

connection with or with respect to any such claims or interests released or settled pursuant to the

Plan.

### N.    Discharge of Claims and Termination of Interests

108.    Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise

specifically provided in the Plan and the Plan Supplement, or in a contract, instrument, or other

agreement or document executed pursuant to the Plan and the Plan Supplement, the distributions,

rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and

release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature

whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date,

whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and

Interests in, the Debtors or any of their assets or properties, regardless of whether any property

shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests,

including demands, liabilities, and Causes of Action that arose before the Effective Date, any

contingent or non-contingent liability on account of representations or warranties issued on or

before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i)

of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt

or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has voted to accept the Plan. Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

**O.      Treatment of Executory Contracts and Unexpired Lease**

109.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases and applicable Cure Claims) shall be and hereby are approved in their entirety.

110.    On the Effective Date, except as otherwise provided herein or in the Plan, pursuant to Article V of the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless an Executory Contract or Unexpired Lease:  (a) was assumed or rejected previously by the Debtors; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume filed on or before the Effective Date; or (d) is identified on the Assumed Executory Contract and Unexpired Lease Schedule or the Assumed and Assigned Unexpired Leases Schedule.  Entry of this Confirmation Order shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases and the assumption and assignment

of the Unexpired Leases set forth on the Assumed and Assigned Unexpired Leases Schedule as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan or this Order, such assumptions, assignments, and rejections will be effective on the Effective Date of the Plan.

111.    Pursuant to Article V(C) of the Plan, subject to resolution of any dispute regarding any Cure Claims and except as otherwise provided herein, all Cure Claims shall be satisfied by the Debtors, as the case may be, upon assumption or assignment, as applicable, of the underlying contracts and unexpired leases. Except as otherwise provided herein, assumption or assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims and nonmonetary defaults, if any, whether monetary or nonmonetary, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption or assumption and assignment, as applicable. Subject to satisfaction of any Cure Claim, all liabilities in any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court or any other entity, upon the deemed assumption of such contract or unexpired lease.  For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan or the applicable Unexpired Lease, neither the Debtors nor Reorganized Debtors shall be liable to any party in any manner on account of an Unexpired Lease that has been assumed and assigned to a third party pursuant to the Plan as set forth in the Plan Supplement.

**P.    Insurance Policies**

112.    Pursuant to Article V.D of the Plan, as of the Effective Date, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as and deemed to be Executory Contracts.  On the Effective Date, such insurance policies and any

4844-0143-1002.13

agreements, documents, and instruments related thereto shall be assumed by the applicable Debtors or Reorganized Debtors and shall continue in full force and effect thereafter in accordance with their respective terms. After the Effective Date, the Reorganized Debtors may terminate or otherwise reduce the coverage under any such policies (including, if applicable, any "tail policy") with respect to conduct occurring after the Effective Date, and all officers, directors, managers, and employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy regardless of whether such officers, directors, managers, or employees remain in such positions after the Effective Date.

**Q.     Provisions Governing Distributions**

113.     The distribution provisions of Article VI of the Plan shall be and hereby are approved in their entirety. Except as otherwise set forth in the Plan or this Confirmation Order, the Reorganized Debtors shall make all distributions required under the Plan. The timing of and reserves from distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

**R.     Provisions Relating to Taxing Authorities.**

114.     Notwithstanding anything to the contrary in the Plan or this Confirmation Order, any Allowed Other Secured Claims filed by the Tennessee Department of Revenue; Angelina County; the City of Allen; Allen Independent School District; the City of Frisco; Cypress-Fairbanks Independent School District; Dallas County; Fort Bend County; Galveston County; Harris County; Jefferson County; McLennan County; Montgomery County; Tarrant County; Williamson County; Bastrop County; Bell County Tax Appraisal; Brazos County; Comal County; Erath County; Harrison County; the Harrison Central Appraisal District; Hays County; the City of Waco, et al.; Midland Central Appraisal District; Frisco Independent School District; Plano Independent School District; Garland Independent School District; City of Garland; Carrollton-

45

Farmers Branch Independent School District; Richardson Independent School District; Arlington Independent School District; the City of Cleburne; Cleburne Independent School District; Joshua Independent School District; the City of Joshua; Johnson County; and Nacogdoches County (collectively, the "Certain Taxing Entities") shall be classified in Class 2.  To the extent the Texas Tax Code or any other tax laws provide for interest and/or penalties with respect to any portion of the Certain Taxing Entities' Claims, such interest and/or penalties shall be included in the Certain Taxing Entities' Claims.  The Certain Taxing Entities will receive interest on Allowed Certain Taxing Entities' Claims related to year 2020 and prior years' taxes at the state statutory rate pursuant to 11 U.S.C. §§ 506(b), 511, and 1129 until paid in full, regardless of when the claim is deemed allowed. If the 2021 taxes are not paid in full before the state law delinquency date, such interest will accrue and be fully collectible until the relevant tax entity is paid in full. The liens, if any, securing the Certain Taxing Entities' Claims shall be retained until the applicable Certain Taxing Entities' Claims are paid in full.  The Debtors or the Reorganized Debtors, as applicable, shall pay the Certain Taxing Entities' Claims on the later of (x) the Effective Date and (y) the date the Certain Taxing Entities' Claims become due pursuant to the Texas Tax Code or other applicable tax laws (subject to any applicable extensions, grace periods, or similar rights under the Texas Tax Code or other applicable tax laws).  Any post-petition ad valorem tax liabilities incurred by the Debtor after the Petition Date shall be paid by the Debtors in the ordinary course of business prior to delinquency.  The Certain Taxing Entities' lien priority, if any, shall not be primed or subordinated by the Exit Facilities if approved by the Bankruptcy Court in conjunction with the Confirmation of this Plan or otherwise. The Reorganized Debtor shall have sixty (60) days from the Effective Date to object to the Certain Taxing Entities' claims; otherwise, said claims shall be deemed as Allowed secured claims in the amount of their last filed Proofs of Claim. In the event

of a default in the payment of the Certain Taxing Entities Claims as provided herein, the Certain

Taxing Entities shall provide notice to counsel for the Reorganized Debtors who shall have twenty

(20) days from the date of such notice to cure the default. If the default is not cured, the Certain

Taxing Entities shall be entitled to pursue non-bankruptcy collection of all amounts owed pursuant

to state law outside the Bankruptcy Court without further notice to or order of this Court. In the

event that collateral that secures the Claim of one or more of the Certain Taxing Entities is returned

to a creditor holding a Lien that is junior to the Certain Taxing Entities' Lien, the Debtors or

Reorganized Debtors, as applicable, shall first pay all ad valorem property taxes that are secured

by such collateral. The Debtors' and the Reorganized Debtors' (as applicable) rights and defenses

under applicable law and the Bankruptcy Code with respect to the foregoing, including their right

to dispute or object to the Certain Taxing Entities' Claims and liens, are fully preserved.

**S.      Provisions Relating to the Texas Comptroller.**

115.     Notwithstanding any term in the Plan or this Confirmation Order to the contrary:

(a) the Texas Comptroller's setoff rights are preserved under § 553 of the Bankruptcy Code; (b) any

and all pre- and postpetition tax liabilities owed by the Debtors to the Texas Comptroller, including

those resulting from audits, shall be determined and resolved in accordance with the laws of the

state of Texas and paid in accordance with Article II of the Plan, § 1129(a)(9)(C) of the Bankruptcy

Code, or applicable nonbankruptcy law, as applicable; (c) all matters involving the Debtors' pre-

and postpetition tax liabilities to the Comptroller shall be resolved in accordance with the processes

and procedures provided by Texas law; (d) the Texas Comptroller shall not be required to file any

proof of claim or other request for payment in order to receive payment of or preserve its rights

regarding its pre- and postpetition tax liabilities; (e) the Chapter 11 Cases shall have no effect on

the Texas Comptroller's rights as to non-debtor third parties; and (f) the Texas Comptroller's

statutory rights to postpetition and post-Effective Date interest are preserved. The Debtors',

4844-0143-1002.13

Reorganized Debtors', and Texas Comptroller's rights and defenses under Texas state law and the Bankruptcy Code with respect to the foregoing are fully preserved.

**T.       Provisions Relating to the Internal Revenue Service**

116.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, to the extent that relevant tax laws provide for interest with respect to any portion of the Internal Revenue Service's Allowed 11 U.S.C. § 507(a)(8) claims (collectively, the "IRS Claims"), such interest shall be included in the IRS Claims.  The Internal Revenue Service will receive interest on IRS Claims related to year 2020 and prior years' taxes pursuant to 11 U.S.C. §§ 511 and 1129(a)(9)(C) until paid in full.  The Debtors' and the Reorganized Debtors' (as applicable) rights and defenses under applicable law and the Bankruptcy Code with respect to the foregoing, including their right to dispute or object to the IRS Claims, are fully preserved.

**U.       Provisions Relating to Governmental Units**

117.    Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (a) any liability to any Governmental Unit that is not a Claim; (b) any Claim of a Governmental Unit arising on or after the Effective Date; (c) any police or regulatory liability to a Governmental Unit on the part of any Person as the owner, permittee, or operator of property after the Effective Date; or (d) any liability to a Governmental Unit on the part of any Person other than the Debtors or the Reorganized Debtors. Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing outside this Court, any liability described in the preceding sentence. Nor shall anything in this Confirmation Order or the Plan divest any tribunal of any jurisdiction to adjudicate any claim, liability, or defense described in this paragraph of the Confirmation Order.

## V. Release of Liens

118. Except (a) with respect to the Liens securing (i) the Exit Facility, if applicable, (ii) Other Secured Claims that are reinstated pursuant to the Plan, or (iii) obligations pursuant to Executory Contracts and Unexpired Leases assumed pursuant to the Plan or (b) as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates and, subject to the consummation of the applicable distributions contemplated in the Plan, shall be fully released and discharged, at the sole cost of and expense of the Reorganized Debtors, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

## W. Post-Confirmation Notices and Bar Dates

119. In accordance with Bankruptcy Rules 2002 and 3020(c), no later than the first Business Day that is at least fourteen (14) days after the Effective Date, the Reorganized Debtors shall cause notice of Confirmation and the occurrence of the Effective Date (the "Notice of Confirmation") to be filed on the docket and be served by United States mail, first-class postage prepaid, by hand, by overnight courier service, or by electronic service to all parties served with the Combined Notice; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Combined Notice but received such notice returned marked as "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar language, unless such Entity has informed the Debtors in

writing of, or the Debtors are otherwise aware of, such Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

120. Except as otherwise provided in the Plan or this Order, requests for payment of Administrative Claims must be filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or the Reorganized Debtors, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

## X.  Section 1145 Exemption

121. To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable nonbankruptcy law, the offering, issuance, and distribution under the Plan of the New Common Equity interests, and to the extent they constitute securities under the Securities Act, the Liquidating Trust Interests, whether on the Effective Date or any other date of distribution thereafter, pursuant to the terms of the Plan or the Confirmation Order, shall be exempt from registration and prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities. The issuance of the New Common Equity is or was in exchange for a portion of an Allowed Claim.

## Y.  Section 1146 Exemption

122. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the issuance, transfer or exchange of any security under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee,

50

intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**Z.      Preservation of Causes of Action**

123.    Except as otherwise provided in this Confirmation Order, the Plan, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall have vested in them as of the Effective Date, and the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including Retained Causes of Action set forth in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including as set forth in Article VIII thereof.  For the avoidance of doubt, the Debtors' failure to specify a Cause of Action in the Disclosure Statement, the Plan, the Plan Supplement, or otherwise in no way limits the rights of the Reorganized Debtors as set forth above and in the Plan.  No entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as an indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all preserved or retained Causes of Action against it.  The Debtors or Reorganized Debtors, as applicable, expressly

reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan or this Confirmation Order.

## AA.    Effectiveness of All Actions

124.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the Debtors, the Reorganized Debtors and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

## BB.    Binding Effect

125.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, the DIP Lender, the Prepetition Lender and any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

126.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as

authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Reorganized Debtors, and each of their respective successors and assigns.

127.    The Plan, all documents and agreements executed by the Debtors in connection therewith, this Confirmation Order, and all prior orders of the Court in the Chapter 11 Cases shall be binding against and binding upon and shall not be subject to rejection or avoidance by any Chapter 7 or Chapter 11 trustee appointed in any of the Chapter 11 Cases, or the Reorganized Debtors.

## CC.    Directors, Officers and Managers

128.    Except as otherwise set forth in the Plan Supplement, as of the Effective Date, the existing boards of directors or boards of managers of the Debtors shall be replaced with the directors and managers set forth in the Plan Supplement without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, managers and members.

129.    The Debtors shall pay any outstanding U.S. Trustee Fees, pursuant to 28 U.S.C. § 1930(a), due prior to the Effective Date, and the Reorganized Debtors shall continue to pay such fees until the Chapter 11 cases are converted, dismissed, or closed, whichever occurs first.

## DD.    Inland Commercial Real Estate Services LLC Resolution

130.    Notwithstanding anything to the contrary in the Plan or this Order: (a) the lease for premises at the Prattville Town Center in Prattville, Alabama by and between the Debtor Cici Enterprises, LP and IREIT Prattville Legends, L.L.C., for which the managing agent is Inland Commercial Real Estate Services, LLC, (the "Prattville Lease") shall be assumed by the Debtors as of the Effective Date; (b) the assumption of the Prattville Lease and cure of all defaults shall result in the full release and satisfaction of any defaults arising prior to the effective date of

4844-0143-1002.13

assumption of the Prattville Lease; (c) if the Debtors wish to disallow or expunge proofs of claim with respect to the Prattville Lease that has been assumed, the counterparty must be sufficiently noticed with a reasonable opportunity to be heard; (d) any liens granted pursuant to the Exit Facility and Exit Facility Documents shall not include the Prattville Lease (except they may include the proceeds of such Prattville Lease) and the Exit Facility Lenders and Exit Facility Agent shall have no rights to access or utilize the Prattville Lease's leased premises absent the existence of such a right under applicable non-bankruptcy law or written consent of the landlord; (e) any Restructuring Transactions that affect the Prattville Lease may (i) only take place following the Effective Date and (ii) not violate the terms of the Prattville Lease; (f) the rights, if any, of counterparties to the Prattville Lease to assert setoff and recoupment are preserved; (g) the Holder of the Cure Claim specific to the assumption of the Prattville Lease shall not be required to file a request for payment of an Administrative Claim; and (h) the cure amount for the Prattville Lease has been agreed to as $23,999.83 plus all accrued but unbilled or not yet due obligations and indemnification obligations and all other amounts that come due under the lease from February 22, 2021 through the Effective Date.

**EE.    Wells Fargo Resolution**

131.    On the earlier of the Effective Date or three (3) business days of the presentment of such amounts, the Debtors shall pay Wells Fargo Bank, National Association ("Wells Fargo") all accrued and unpaid amounts reimbursable under the Prepetition Credit Agreement and/or the Successor Agent Agreement by and between Wells Fargo and the Prepetition Administrative Agent (the "Accrued Administrative Fees"). At least $47,964.40 in Accrued Administrative Fees are due and owing to Wells Fargo.

4844-0143-1002.13

**FF.** **Amended Plan Supplement**

132. Any counterparty to any assumed Executory Contract or Unexpired Lease that was added to the Assumed Executory Contracts and Unexpired Leases List by the *Notice of Filing of First Amended Plan Supplement* [Docket No. 189] shall have until 5:00 pm prevailing Central Time on March 9, 2021 (or date that may be extended with prior written consent of the Debtors and Consenting Lender),[4] to file any objection to the assumption of such Executory Contract or Unexpired Lease and the Cure Claim, if applicable. The Debtors may remove any counterparty from the Assumed Executory Contracts and Unexpired Leases List prior to the Effective Date by filing a notice with the Court and providing written notice to the applicable counterparty. If the Debtors, with the Consenting Lender's consent, and an objecting counterparty reach agreements on the objection, the parties will file a stipulation with the Court setting forth the terms of agreement. If no resolution on the objection is reached prior to the Effective Date, the parties will confer and schedule a hearing with the Court to determine: (a) whether the applicable Executory Contract or Unexpired List may be assumed under the Plan; and (b) the applicable Cure Claim to be paid to the counterparty.

**GG.** **Deadline to Commence Chapter 5 Causes of Actions**

133. Notwithstanding anything else in the Plan, section 546(a) of the Bankruptcy Code, or this Confirmation Order, the Reorganized Debtors shall commence any claims and causes of action under Chapter 5 of the Bankruptcy Code, including, for instance, turnover, fraudulent transfers, and preference claims (collectively, the "Chapter 5 Causes of Action") on the first business day that is at least 60 days after the Effective Date (the "Chapter 5 Cause of Action

---

[4] This paragraph shall apply only to the following counterparties, which were added on March 2, 2021: (1) Clark Associates, Inc. dba Clark National Accounts; (2) Dr. Pepper/Seven Up, Inc., a Dr. Pepper Snapple Group company; (3) Epic Servers, LLC; (4) Mako Networks, Inc.; (5) Punchh, Inc.; (6) Restaurant Analytics Delivered, LLC; (7) Worldpay U.S., Inc.; and (8) Worldpay Integrated Payments, LLC.

Deadline"). In the event the Reorganized Debtors determine that the Debtors' estates have actionable Chapter 5 Causes of Action (collectively, the "Actionable Chapter 5 Causes of Action"), the Reorganized Debtors shall request and attend a status conference (the "Status Conference") before this Court with respect to the Actionable Chapter 5 Causes of Action.  If a Status Conference is necessary with respect to Actionable Chapter 5 Causes of Action, the Chapter 5 Cause of Action Deadline shall be stayed with respect to those Actionable Chapter 5 Causes of Action until a date that is seven (7) days after the completion of the Status Conference. Nothing in this paragraph shall allow the Debtors, the Reorganized Debtors, or the Estates to file or otherwise pursue any Cause of Action released by any of the Debtors, the Reorganized Debtors, or the Estates pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan.

## HH.    Nonseverability of Plan Provisions upon Confirmation

134.    Notwithstanding the possible applicability of Bankruptcy Rules 3020(e), 6004(g), 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.  Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Bankruptcy Court is (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

## II.    Waiver or Estoppel

135.    Except as otherwise set forth in the Plan or this Confirmation Order, each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their

4844-0143-1002.13

counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court before the Confirmation Date.

**JJ.** **Authorization to Consummate**

136. The Debtors are authorized to consummate the Plan, including the Restructuring Transactions contemplated thereby, at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan. The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the Effective Date.

**KK.** **Injunctions and Automatic Stay**

137. Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order (including the Injunction) shall remain in full force and effect in accordance with their terms.

**LL.** **Reversal/Stay/Modification/Vacatur of Confirmation Order**

138. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of

4844-0143-1002.13

such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

**MM. Governmental Approvals Not Required**

139. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations or any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

**NN. Waiver of Filings**

140. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

**OO. Headings**

141. Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Orders for any other purpose.

**PP. Effect of Non-Occurrence of Conditions to the Effective Date**

142. If the Effective Date of the Plan does not occur, (a) the Plan shall be null and void in all respects other than as set forth herein and (b) nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (ii) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

**QQ.** **Effect of Conflict Between Plan, the Disclosure Statement, the Plan Supplement, and Confirmation Order**

143. Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or the Plan Supplement (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

**RR.** **Waiver of 14-Day Stay**

144. Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective immediately and not subject to any stay.

**SS.** **Final Order**

145. This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

**TT.** **Retention of Jurisdiction**

146. Except as set forth in the Plan or this Confirmation Order, the Court may properly, and upon the Effective Date shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

# # # END OF ORDER # # #

4844-0143-1002.13

Submitted by:

Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
**GRAY REED & McGRAW LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:        (214) 954-4135
Facsimile:        (214) 953-1332
Email:            jbrookner@grayreed.com
        akaufman@grayreed.com
        lwebb@grayreed.com
        acarson@grayreed.com

-and-

Paul D. Moak (TX Bar No. 00794316)
**GRAY REED & McGRAW LLP**
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:        (713) 986-7127
Facsimile:        (713) 986-5966
Email:            pmoak@grayreed.com

*Counsel to the Debtors*
*and Debtors in Possession*

4844-0143-1002.13